# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SAMUEL CLEMENT WENDT,                    )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )          1:25CV16
                                         )
WARDEN BENJAMIN                          )
ANDERSON, *et al.*,                      )
                                         )
            Defendants.                  )


## ORDER, MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendants' three motions to dismiss or transfer venue (Docket Entries 13, 21, 30) and Plaintiff Samuel Clement Wendt's ("Wendt's") motion for a preliminary injunction (Docket Entry 6) and motion to show cause (Docket Entry 37). For the reasons laid out in this opinion, the Court denies Wendt's motion to show cause and orders Defendants to respond to Wendt's motion for a preliminary injunction within fourteen days. Additionally, the undersigned recommends that the Court deny Defendants' motions to dismiss. Finally, the undersigned recommends that the Court dismiss *sua sponte* Wendt's complaint to the extent that it contains North Carolina constitutional law claims and claims brought on behalf of other inmates.

## I.      BACKGROUND

In addition to the instant suit, Wendt has filed three other suits that are relevant to the pending motions. Two of those suits— Nos. 5:23-ct-03047 ("'3047") and 5:23-ct-03275 ("'3275")—are pending in the U.S. District Court for the Eastern District of North Carolina.

The third—No. 24CVS001543-790 ("'1543")—was dismissed with prejudice by the Rowan County Superior Court. The undersigned summarizes Wendt's instant complaint first, followed by the relevant portions of his other suits.

## A. Instant Suit

Wendt is a practicing Catholic and an inmate in the North Carolina Department of Adult Corrections ("NCDAC") prison system. (Docket Entry 2 at 12,[1] "Complaint.") In March 2023, he was transferred from Tabor Correctional Institution ("TCI") to Piedmont Correctional Institution ("PCI"). (*Id.*) Since then, Wendt alleges officials at PCI and NCDAC have burdened his Catholic faith and favored the faith of Protestant inmates. (*See generally id.*)

Wendt has sued two groups of defendants: PCI officials and NCDAC officials. The PCI officials are Warden Ben Anderson, Chaplain FNU Hackett, Programs Director Kevin McClain, Associate Warden of Programs Dana Smith-Heslop, and Associate Warden of Custody/Operations Mercedes Fordham. (*Id.* at 7–9.) The NCDAC officials are NCDAC Secretary Todd Ishee, Deputy Secretary of Programs Maggie Brewer, the unnamed NCDAC Religious Policy Coordinator/Superintendent, Executive Director of the Grievance Review Board Kimberly Grande, Grievance Review Board member Angela Dellaripa, and Grievance Review Board member Wakenda Greene. (*Id.* at 9–11.) Wendt sues all defendants in their official and individual capacities.

Given Wendt is proceeding *pro se*, the Court must construe his complaint liberally. *See Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015). Wendt alleges the First Amendment's free

---

[1] Unless otherwise noted, all citations in this opinion to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

2

exercise clause, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the Eighth Amendment's prohibition on cruel and unusual punishment were violated by various Defendants:

- Encouraging Wendt to attend non-Catholic worship services (Compl. at 8);

- Denying Catholic sacraments to Wendt, including Holy Mass, confession, and communion, from March 16, 2023 until July 28, 2024 (*id.* at 13, 20);

- Providing Catholic sacraments to Wendt on a monthly rather than weekly basis from July 28, 2024 through the present day (*id.* at 20);

- Denying Wendt alcoholic wine for the sacrament of the consumption of the blood of Jesus Christ during Wendt's entire time at PCI (*id.* at 21);

- Denying Catholic services without an outside volunteer to Wendt, including prayer groups, Bible studies, and worship (*id.* at 13, 14); and

- Avoiding or delaying finding, training, and approving outside volunteers to provide Catholic services to Wendt (*id.* at 15–21).

Wendt also alleges that the First Amendment's Establishment Clause and the Fourteenth Amendment's Equal Protection clause were violated by various Defendants:

- Classifying Catholics as Christians, which prevents Catholic inmates from exercising certain privileges available only to minority faith groups, such as meeting without an outside volunteer (*id.* at 21);

- Allowing one specific Protestant religious organization—"Elevation Church"—special privileges not available to other religious groups, including a weekly worship night, baptism ceremonies, and expedited training and approval of outside volunteers (*id.* at 22–23, 25);

- Denying computer-use to Wendt for pursuing a doctoral degree while other inmates were allowed to use the computers[2] (*id.* at 23);

---

[2] The undersigned also construes this as a retaliation claim under the First Amendment, because Wendt states he "fully believes this denial is in retaliation for Wendt's grievances and suits." (Compl. at 23.)

3

- Denying use of musical instruments to all inmates except for a "hand-selected" group of Protestant Christians (*id.* at 22, 26);

- Canceling prisoners' outdoor recreation time to create time for BBQs, worship services, and baptism ceremonies held by Protestant Christian churches (*id.* at 24, 25);

- Providing special privileges to four Protestant Christian inmates designated as "Field Ministers," including the ability to get paid more than other inmates, provide Christian counseling, teach nonreligious classes (into which, Wendt alleges, "they inject Protestant Christian views") access computers, use a clear backpack, and oversee of religious services, despite the fact that other inmates, like Wendt, have more advanced or relevant degrees (*id.* at 25–26);

- Providing no secular bachelor's degree program, but instead only a program offered through the Southeastern Theological Baptist Seminary (*id.* at 26);

- Denying worship opportunities to Native American, Jewish, and Muslim inmates comparable to those enjoyed by Protestant Christian inmates (*id.* at 27);

- Not allowing inmates to attend Catholic services (*id.* at 27);

- Limiting the number of inmates who may attend a worship service, resulting in "some inmates being denied services for weeks at a time"[3] (*id.* at 27);

- Providing music, art, and computer literacy programs solely though Chaplain Hackett, as opposed to a secular provider (*id.* at 28); and

- Transferring a Jewish prisoner out of PCI after he complained of disparate treatment of his faith (*id.* at 28).

Additionally, Wendy appears to be asserting that his due process rights and N.C. Gen. Stat. § 148-118.8 were violated by the three Grievance Review Board defendants when they failed to address the above problems in response to Wendt's grievances. (*Id.* at 11.) Finally, Wendt

---

[3] The undersigned also construes this as a claim under the First Amendment's Free Exercise clause.

asks that this Court "exercise supplemental jurisdiction" over North Carolina constitutional law claims he filed in his '1543 suit in state court.  (*Id.* at 30.)

Wendt alleges that Defendants' conduct caused him to incur "psychological injuries," including a "mental breakdown episode in March of 2023," "exacerbation of pre-existing PTSD," "major depressive disorder," "increases in medication and changing medications," "extreme stress," "anxiety," "loss of motivation," "paranoia due to fear of retaliation," and "severe erosion of trust and confidence in NCDAC staff."  (*Id.* at 30–31.)  He also alleges "financial injury" because he "has had to purchase his own legal books" to litigate this case and "physical injuries" including "fluctuating weight, irregular blood pressure, hyper tension, loss of energy-fatigue resulting in excessive sleep, [and] chest pain[.]"  (*Id.* at 31.)

Wendt requests that the Court "strike as unconstitutional the NCDAC volunteer only policy," "issue a declaration" that defendants acted unlawfully, "issue a preliminary and permanent injunction against defendants" to "eliminate establishment of specific Christian churches" and "accommodate [Wendt's] Free Exercise Rights," provide Wendt with $25,000 damages per defendant plus punitive damages against certain defendants and litigations costs, and "sanction[n] and/or fine . . . any defendant found to be in violation of any N.C. state law or internal policy."  (*Id.* at 33.)

### B.  Eastern District Suit '3047

The operative complaint in the '3047 suit includes claims against the Warden, Deputy Wardens, and Chaplains who oversaw Wendt when he was incarcerated at TCI.  *See* Docket

5

Entry 9 at 3–4, *Wendt v. Bullard*, No. 5:23-ct-03047 (E.D.N.C.).[4]  Like the instant suit, the '3047

suit additionally names Kimberly Grande, Executive Director of the Grievance Review Board,

as a defendant.  *Id.*  Also like the instant suit, the '3047 suit claims its defendants violated the

free exercise clause, establishment clause, and fourteenth amendment for reasons related to

Wendt's Catholic faith.  *See generally Wendt v. Bullard*, No. 5:23-CT-3047-FL, 2024 WL 3955458

(E.D.N.C. Aug. 27, 2024).

 After Wendt left TCI for PCI, but before he filed the instant suit in the Middle District,

Wendt attempted to amend his complaint in the '3047 suit to add his instant claims.  The

Eastern District Court did not allow him to do so.  Given the importance of this issue to this

Recommendation, it is worth reprinting the Eastern District's analysis in full:

> The court now turns to plaintiff's motions to amend or
> supplement the complaint. As the court previously explained to
> plaintiff, he cannot join multiple defendants in a single action
> unless he shows that "(A) any right to relief is asserted against
> them jointly, severally, or in the alternative with respect to or
> arising out of the same transaction, occurrence, or series of
> transactions or occurrences; and (B) any question of law or fact
> common to all defendants will arise in the action." Fed. R. Civ.
> P. 20(a)(2). "The 'transaction or occurrence test' of the rule ...
> 'permit[s] all reasonably related claims for relief by or against
> different parties to be tried in a single proceeding.' " *Saval v. BL
> Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (quoting *Mosley v. Gen.
> Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)). And where
> plaintiff is incarcerated, "[u]nrelated claims against different
> defendants belong in different suits [under Rule 20 and] to ensure
> that prisoners pay the required filing fees [pursuant to 28 U.S.C.
> § 1915(b)]." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).
>
>  Here, the claims in the motions to amend and supplement
> for the most part occurred at a different prison, are alleged
> against defendants employed at that facility, and they involve
> distinct factual issues. For example, plaintiff alleges he was denied

---

[4] This citation, and others like it below, refer to a docket entry in the specified Eastern
District suit, rather than a docket entry in the instant suit.

Catholic services at the Piedmont Correctional Institution ("Piedmont C.I.") because the chaplain determined he could attend non-denominational Christian services as a substitute. (Mot. to Suppl. (DE 31) at 4). That is a different claim than the one at issue in this case, which involves wholesale denial of services during the pandemic. Indeed, plaintiff eventually received Catholic services at Tabor C.I. while he alleges that officials at the Piedmont C.I. are denying his requests for such services. (*Compare id. with* Complaint (DE 9) at 9). The only similarity between the claims is that plaintiff is asking the DAC to revise its policy to allow Catholics to use inmate faith helpers as opposed to outside volunteers to conduct religious services. But as explained above, that request for injunctive relief is dismissed as to this action. Accordingly, these claims are not reasonably related, and plaintiff cannot add the newly proposed defendants by way of a motion to amend or to supplement. *See Saval*, 710 F.2d at 1031; *George*, 507 F.3d at 607; *see also Katyle*, 637 F.3d at 471.

Based on the foregoing, the court denies as futile plaintiff's motions to amend the complaint. As plaintiff recognizes, the proper venue for these new claims arising at the Piedmont C.I. is the United States District Court for the Middle District of North Carolina because the claims arose in that district and most of the defendants are in that district. *See* 28 U.S.C. § 1391(b). Plaintiff therefore can file a new action in that district asserting these claims.

*Wendt*, 2024 WL 3955458, at *7–8.

## C. Eastern District Suit '3275

Wendt's complaint in the '3275 suit names various officials at TCI and NCDAC as defendants. *See* Docket Entry 1 at 3–7, *Wendt v. Bullard*, No. 5:23-ct-03275 (E.D.N.C.). Like the instant suit, these initially included grievance review board member Wakenda Greene and NCDAC Secretary Ishee. *Id.* at 3, 5. However, the Eastern District dismissed Wendt's claims against Ishee and Greene without prejudice.[5] *See* Docket Entry 5 at 5, No. 5:23-ct-03275. In

---

[5] The Eastern District found that Wendt had failed to state a claim against Greene and Ishee, *see* Docket Entry 5 at 5, No. 5:23-ct-03275, and "it is well established that a dismissal

the '3275 suit, Wendt claims that TCI's restrictions on time spent outside of a cell violated his Eighth and Fourteenth Amendment rights.  *See generally id.*

### D. State Court Suit '1543

Wendt's state court suit named as defendants officials at PCI and NCDAC, all of whom are also defendants in this case, except for FNU Ritchie, Wendt's case manager.  (*See* Docket Entry 14-2 at 10–12.)  Wendt claimed that the defendants violated his rights under the North Carolina Constitution by denying him access to computers and musical instruments, both of which he wanted to use to pursue a graduate degree.  (*See id.* at 9–31.)

## II.    JURISDICTIONAL ISSUES

The undersigned recommends that the Court dismiss Wendt's North Carolina constitutional law claims and his claims asserted on behalf of other inmates for lack of jurisdiction.

Defendants did not raise any jurisdictional issues in their motion to dismiss.  But jurisdiction "may (or, more precisely, must) be raised *sua sponte* by the court" if in doubt. *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004); *accord. Mebane v. GKN Driveline N. Am., Inc.*, 499 F. Supp. 3d 220, 229 (M.D.N.C. 2020).   Here, the undersigned raises two jurisdictional issues *sua sponte*: supplemental jurisdiction and standing. *See* 28 U.S.C. § 1367; *Optolum, Inc. v. Cree, Inc.*, No. 1:17CV687, 2021 WL 8533814, at *2 (M.D.N.C. Oct. 24, 2021) ("The question of standing is a jurisdictional question.").

---

for failure to state a claim is with prejudice unless the court specifically orders dismissal without prejudice."  *R.A. v. McClenahan*, 122 F.4th 143, 147 (4th Cir. 2024) (quotation marks omitted).

## A. Supplemental Jurisdiction

The Court should decline to exercise supplemental jurisdiction over Wendt's North Carolina constitutional law claims. "The district courts may decline to exercise supplemental jurisdiction over a claim [if] the claim raises a novel or complex issue of State law[.]" 28 U.S.C. § 1367(c)(1). For example, "because questions of state constitutional law are best answered by state courts, rather than by the federal judiciary, [federal courts should] decline to exercise supplemental jurisdiction over [state constitutional] claims." *Phillips v. Rector & Visitors of Univ. of Virginia*, No. 3:22-CV-00075, 2024 WL 4831876, at *2 (W.D. Va. Nov. 19, 2024) (citation modified); *see also Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940) ("It is fundamental that state courts be left free and unfettered by us in interpreting their state constitutions.").

Here, Wend asks the Court to exercise its supplemental jurisdiction over his claims in the '1543 suit, which involved questions of whether denying a computer and musical instruments to a prisoner violates that prisoner's rights under the North Carolina constitution. (*See* Compl. at 30.) The North Carolina caselaw does not appear to provide a clear answer to whether these claims are correct. The Court should therefore decline to exercise its supplemental jurisdiction under 28 U.S.C. § 1367(c)(1) and dismiss Wendt's North Carolina constitutional law claims without prejudice.

## B. Standing

The Court should also dismiss any claims Wendt may be making on behalf of other inmates. "Standing doctrine strongly disfavors so-called third-party standing cases," in which a plaintiff seeks "to vindicate the legal rights or interests of" a nonparty. *See State of Maryland v. United States Dep't of Agric.*, 151 F.4th 197, 212 (4th Cir. 2025). An exception exists only

where the plaintiff has a close relationship with the nonparty, and some "hindrance" exists to the nonparty bringing the claim. *See Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004).

Here, Wendt's complaint, liberally construed, could be interpreted to include claims brought on behalf of Native American, Muslim, Jewish, or even other Catholic inmates at PCI, without alleging any of the facts necessary for the exception to apply. (*See* Compl. at 27–28.) The undersigned therefore recommends that the Court dismiss all such claims. Wendt and Defendants should both note that such a dismissal would not prevent Wendt from using evidence of discrimination against other inmates' religions to support Wendt's own establishment clause claim.

## III.   MOTIONS TO DISMISS OR TRANSFER VENUE

In their motions to dismiss or transfer venue (Docket Entries 13, 21, 30), Defendants argue that Wendt's state court suit bars the instant suit via preclusion doctrines, and that Wendt's Eastern District suits bar the instant suit via the rule against claim splitting and the first-to-file rule. Alternatively, Defendants argue that Wendt's claims should be transferred to the Eastern District to prevent forum shopping. The undersigned disagrees with all of these arguments and therefore recommends that the Court deny Defendants' motions.

### A.  Preclusion Doctrines

Defendants argue that Wendt's state court suit triggers preclusion doctrines, otherwise known as *res judicata*. (Docket Entry 14 at 9–11; Docket Entry 22 at 9–11; Docket Entry 31 at 9–11.) "A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *accord. Gift Surplus, LLC v. N.*

10

*Carolina ex rel. Cooper*, 605 F. Supp. 3d 711, 723 (M.D.N.C. 2022). However, "[r]easonable doubt as to what was decided by a prior judgment should be resolved against using it" for preclusion. *See United States v. Ruhbayan*, 325 F.3d 197, 203 (4th Cir. 2003). The proponent of preclusion bears the burden of establishing its applicability. *See Bennett v. Garner*, 913 F.3d 436, 441 (4th Cir. 2019); *accord. Hebbeler v. First Mariner Bank*, No. CV ELH-17-3641, 2020 WL 1033586, at *9 (D. Md. Mar. 2, 2020).

North Carolina courts, like federal courts, recognize two preclusion doctrines:

> claim preclusion and issue preclusion. Claim preclusion . . . precludes relitigation of claims [and] is more generally referred to as *res judicata*. Issue preclusion, which precludes the parties or their privies in a former action from relitigating in a subsequent action issues necessarily determined in the former action, is more generally referred to as collateral estoppel.

*Cnty. of Rutherford By & Through Child Support Enf't Agency ex rel. Hedrick v. Whitener*, 100 N.C. App. 70, 74 (1990) (citation modified).[6] Claim preclusion applies not only to claims actually raised, but also to "every claim that might have been raised in the first suit" based on the same facts. *See Barrow v. D.A.N. Joint Venture Props. of N. Carolina, LLC*, 232 N.C. App. 528, 531 (2014); *see also Moore v. Harkins*, 179 N.C. 167 (1919). Both claim and issue preclusion require a "final judgment on the merits" under North Carolian law. *See Gift Surplus*, 605 F. Supp. 3d at 723, 725 (citing *State ex rel. Utils. Comm'n v. Thornburg*, 325 N.C. 463, 468 (1989); *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558–59 (2009)).

Here, Wendt's state court suit does not trigger claim preclusion or issue preclusion because Defendants have not met their burden to show, beyond a reasonable doubt, that

---

[6] Courts also sometimes refer to both claim and issue preclusion collectively as *res judicata*. *See* Whitener, 100 N.C. App. at 74.

Wendt's state court dismissal was a final judgment on the merits. Wendt's state court suit was dismissed with prejudice for frivolity upon the state court's review of Wendt's petition to proceed as an indigent under N.C. Gen. Stat. § 1-110. (*See* Docket Entry 14-3 at 1, 4.) Although North Carolina courts generally find that a "dismissal with prejudice is an adjudication on the merits and has *res judicata* implications," *see, e.g., Stafford v. Cnty. of Bladen*, 163 N.C. App. 149, 152 (2004), it is not clear whether the state court's dismissal here was with prejudice as to Wendt refiling as an indigent, or to Wendt refiling in general. The federal equivalent to this sort of dismissal—dismissal after *in forma pauperis* review for frivolity— precludes only refiling *in forma pauperis*, not refiling in general, and therefore does not trigger *res judicata* on the merits of a claim. *See Denton v. Hernandez*, 504 U.S. 25, 34 (1992); *accord. Lindiment v. Jones*, No. 1:17CV501, 2017 WL 4119644, at *5 (M.D.N.C. Sept. 15, 2017), *report and recommendation adopted*, No. 1:17CV501, 2017 WL 4417676 (M.D.N.C. Oct. 3, 2017). And Defendants cite no case—nor could the undersigned find any—in which North Carolina courts address whether dismissal of a case brought as an indigent under North Carolina law works the same way as it does under federal law.

For the above reasons, neither claim nor issue preclusion bar Wendt's instant claims.[7]

---

[7] Even if the state court's dismissal of Wendt's complaint were a final judgment on the merits, the only instant federal claims precluded would be those related to Wendt's use of computers and musical instruments. (*See* Compl. at 22, 23, 26.)

"North Carolina courts apply claim preclusion more narrowly than most federal and state courts" in that a second action is not precluded "based on claims not . . . properly predicated upon the pleadings in the first lawsuit." *Gift Surplus*, 605 F. Supp. 3d at 723–24 (quotation marks omitted) (citing *Intersal, Inc. v. Hamilton*, 373 N.C. 89, 107–08 (2019); *Bockweg v. Anderson*, 333 N.C. 486, 492 (1993)). For example, the North Carolina Supreme Court has ruled that a second suit is not precluded where the first suit did not allege sufficient facts to state the second suit's claim, even though the first and second suit involved the same general circumstances. *See Intersal*, 373 N.C. at 107–09. Here, the only instant federal claims that

12

## B. Claim Splitting

Defendants argue that Wendt's Eastern District suits trigger the rule against claim splitting. (Docket Entry 14 at 11–13.) The undersigned disagrees.

"The rule against claim splitting prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015) (citation modified). "[T]he second suit will be barred if the claim involves the same parties and arises out of the same transaction or series of transactions as the first claim." *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. App'x 256, 265 (4th Cir. 2008) (quotation marks omitted); *accord. Custer v. Dovenmuehle Mortg., Inc.*, No. 1:25-CV-190, 2025 WL 3158026, at *2 (M.D.N.C. Nov. 12, 2025).

Here, although Wendt claims constitutional violations related to religion and recreation in both his Eastern District suits and the instant suit, the suits are otherwise dissimilar. They involve a completely different set of transactions and, for the most part, different defendants, because the Eastern District suits involve incidents that took place at TCI while the instant suit involves incidents that took place at PCI. Indeed, this is the reason the Eastern District

---

Wendt could have brought in his state court suit based of the facts he alleged in that suit's complaint were free exercise clause and establishment clause violations related to the denial of computers and musical instruments. (*Compare* Compl. at 22, 23, 26 *with* Docket Entry 14-2 at 16.) Thus, claim preclusion would not bar most of Wendt's instant claims.

Issue preclusion also applies "narrowly" under North Carolina law because "the issue in question [must have been] identical to an issue actually litigated and necessary to the judgment" in the prior suit. *See Gift Surplus*, 605 F. Supp. 3d at 725 (citing *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558–59 (2009)). "A very close examination of matters actually litigated must be made in order to determine if the underlying issues are in fact identical." *Beckwith v. Llewellyn*, 326 N.C. 569, 574 (1990); *accord. Fish v. Stetina*, 297 N.C. App. 733, 740 (2025) *review dismissed, cert. denied*, 915 S.E.2d 168 (N.C. 2025). Here, no issue in Wendt's state suit was identical to Wendt's instant federal claims because the state suit involved only issues of state constitutional violations. (*Compare* Docket Entry 14-2 *with* Compl.)

13

expressly prohibited Wendt from joining his instant claims to his '3047 suit. *See Wendt*, 2024 WL 3955458, at *7–8.

The only common defendants between the Eastern District suits and the instant suit are the grievance review board members Grande (in the '3047 suit) and Greene (in the '3275 suit), and NCDAC Secretary Ishee (in the '3275 suit). *See* Docket Entry 9 at 3, No. 5:23-ct-03047 (E.D.N.C.); Docket Entry 1 at 3, 5, No. 5:23-ct-03275 (E.D.N.C.). And the claims Wendt brought against those defendants in the Eastern District do not involve the same transactions as those in the instant suit. In the instant suit, Wendt alleges that Grande and Greene failed to give him relief from constitutional violations at PCI (*see* Compl. at 11, 18), whereas in the Eastern District suits, Wendt alleges that Grande and Greene failed to give him relief for constitutional violations at TCI, *see* Docket Entry 9 at 10–11, No. 5:23-ct-03047; Docket Entry 1 at 12, No. 5:23-ct-03275. Similarly, the instant claims against Secretary Ishee involve NCDAC policies that allegedly burdened Wendt's faith during his time at PCI (*see* Compl. at 10), whereas the '3275 claims against Ishee involve policies governing how much time Wendt could spend outside his cell at TCI, *see* Docket Entry 1 at 8, 14, 17, No. 5:23-ct-03275.

Moreover, the Eastern District dismissed Wendt's claims against Ishee and Greene without prejudice in the '3275 suit, *see* Docket Entry 5 at 5, No. 5:23-ct-03275, and the rule against claim splitting does not apply to non-pending claims, *see, e.g., Superior Performers, Inc. v. Fam. First Life, LLC*, No. 1:14CV382, 2015 WL 471389, at *4 (M.D.N.C. Feb. 4, 2015); *Reid v.*

*Wells Fargo Home Mortg.*, No. CIV. RDB-10-01853, 2011 WL 4072143, at *5 (D. Md. Sept. 12, 2011).[8]

Accordingly, the rule against claim splitting does not bar Wendt's instant claims.

### C. First-to-File Rule

Defendants argue that Wendt's Eastern District suits trigger the first-to-file rule, blocking the instant suit. (Docket Entry 14 at 7–9; Docket Entry 22 at 6–9; Docket Entry 31 at 6–9.) "When a lawsuit is filed in multiple forums, the Fourth Circuit generally adheres to the first-to-file rule, which holds that the first suit should have priority, absent the showing of a balance of convenience in favor of the second action." *Davis v. Zuccarello*, No. 1:16-CV-01086, 2017 WL 2729089, at *2 (M.D.N.C. June 23, 2017) (citation modified) (quoting *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 594–95 (4th Cir. 2004)). But this rule does not bar the instant suit, for two reasons.

First, Wendt's Eastern District suits are not the type that usually trigger the first-to-file rule. Generally, the "first-to-file rule . . . arises when different parties file lawsuits in different courts regarding the same claim, rather than, like here, when the same party files [a] claim in different courts." *See Graham v. Dupont De Nemours, Inc.*, No. 2:24-CV-09444-FLA (SKX), 2025 WL 464319, at *3 (C.D. Cal. Feb. 11, 2025).

Second, "mere similarity of claims is not sufficient to invoke" the first-to-file rule; there must be "substantial overlap with respect to the issues and parties." *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635–36 (E.D. Va. 2006); *see also Davis v. Zuccarello*, No. 1:16-

---

[8] If Defendants' counsel wanted the Court to dismiss these defendants from the instant suit for similar reasons, they should have made that argument in their motions.

CV-01086, 2017 WL 2729089, at *2 (M.D.N.C. June 23, 2017) ("Multiple lawsuits are subject to the first-to-file rule if 'the same factual issues' provide the basis for each suit."). Here, as discussed in the claim-splitting analysis, there is little overlap between Wendt's Eastern District suits and his instant suit.

Accordingly, the first-to-file rule does not bar Wendt's instant claims.

### D. Venue Transfer

For any claims not dismissed, Defendants seek a transfer to the Eastern District of North Carolina to prevent forum shopping. (Docket Entry 14 at 13–14; Docket Entry 22 at 11–12; Docket Entry 31 at 11–12.) The undersigned recommends denying this request.

The factors that courts consider when adjudicating a venue transfer request are "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *W.R. Grace & Co.-Conn. v. Wood Env't*, Civil Action No. GLR-22-285, 2023 U.S. Dist. LEXIS 235932, at *5 (D. Md. Apr. 17, 2023) (citing *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs.*, Inc., 791 F.3d 436, 444 (4th Cir. 2015)). Here, Wendt chose the Middle District, and the Middle District is presumably where the defendants and witnesses from the PCI are located. And there is no serious indication of forum shopping: Wendt filed his instant claims with the Middle District only after the Eastern District told him to do so. *See Wendt*, 2024 WL 3955458, at *7–8. Thus, Defendants' request for a change in venue should be denied.

### IV.   MOTION TO SHOW CAUSE

Wendt has moved for the Court to order Defendants to show cause as to why they should not be sanctioned under Rule 11 for various false statements in their motions to

16

dismiss, chief among them Defendants' portrayal of Wendt's Eastern District suits as duplicative of this suit. (*See generally* Docket Entries 37, 38.) The Court denies Wendt's motion because Defendants produced evidence of Wendt's own misconduct and because Wendt did not follow Rule 11's procedural requirements. Still, the Court warns Defendants' counsel that future frivolous filings risk incurring sanctions. The Court also warns Wendt that evidence that Wendt may be bringing this case for an improper purpose is concerning, and that *pro se* plaintiffs are not immune from sanctions.

Rule 11 requires that all materials submitted to the Court not be "presented for any improper purpose, such as to harass [or] cause unnecessary delay," that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). "Rule 11 sanctions must differentiate between a losing argument or position, which is not sanctionable, and a frivolous one, which is." *In re Johnson*, 186 F. App'x 390, 394 (4th Cir. 2006). A legal argument is "only sanctionable when, in applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *Id.* (quotation marks omitted).

"Whether to impose Rule 11 sanctions . . . is committed to the discretion of the district court." *DeBauche v. Trani*, 191 F.3d 499, 512 (4th Cir. 1999). The district court may deny a motion for sanction for reasons unrelated to its merits. For example, "courts in this circuit consistently decline to award Rule 11 sanctions when a movant [for sanctions] fails to satisfy the Rule's procedural requirements" of serving their motion on the offending party at least

17

twenty-one days before filing it with the court, so that the offending party has an opportunity to correct their filings. *See Echeverria v. Samuel I. White, P.C.*, No. 1:18-CV-30 (TSE/TCB), 2019 WL 1375587, at *4 (E.D. Va. Feb. 12, 2019) (collecting cases), *report and recommendation adopted*, No. 1:18CV30, 2019 WL 1441616 (E.D. Va. Mar. 28, 2019). Additionally, a "district court's finding of widespread misconduct among both parties is a more than adequate justification for an exercise of discretion denying sanctions." *Stretchline Intell. Props. Ltd. v. H&M Hennes & Mauritz LP*, No. 2:10-CV-371, 2015 WL 789185, at *5 (E.D. Va. Feb. 24, 2015) (citation modified).

Here, Wendt's motion involves both of the above non-merits-based deficiencies. First, Defendants have produced evidence that Wendt may be using this litigation to harass North Carolina officials into transferring him to a prison in Montana. (*See* Docket Entry 41 at 2.) Wendt's argument that such evidence is inadmissible is of no consequence; evidence that is inadmissible at trial may still be considered by the court for the purpose of imposing Rule 11 sanctions. *See, e.g., Glucksberg v. Polan*, 251 F. Supp. 2d 1294, 1296 (S.D.W. Va. 2003). Thus, even if Defendants' motions are sanctionable, "widespread misconduct among both parties," *Stretchline*, 2015 WL at *5, counsels against sanctions here.

Second, it is not clear that Wendt complied with Rule 11's procedural requirements. Wendt did not serve his motion on Defendants at least twenty-one days before filing it with the court. Wendt points out that he provided notice by mentioning the possibility of sanctions under Rule 11 in his responses to the motions to dismiss, as well as by contacting Defendants' counsel informally, and that this type of notice was found sufficient in *Cardillo v. Cardillo*, 360 F. Supp. 2d 402, 419 (D.R.I. 2005). (*See* Docket Entry 43 at 7–11.) However, *Cardillo*

18

contradicts both the express text of Rule 11(c)(2) ("A motion for sanctions must be made separately from any other motion and . . . must not be filed or be presented to the court if the challenged paper . . . is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.") and the reasoning of other courts, *see, e.g., In re Pratt*, 524 F.3d 580, 588 n.26 (5th Cir. 2008); *Carruthers v. Flaum*, 450 F. Supp. 2d 288, 306 (S.D.N.Y. 2006).

Given the above non-merits-based deficiencies, the Court denies Wendt's motion. Nevertheless, the Court warns Defendant's counsel that their motions may violate Rule 11(b),[9] and that future frivolous filings could incur sanctions. Defendants' motions argue that the instant suit should be dismissed under the first-to-file rule or the rule against claim splitting, or alternatively transferred to the Eastern District, because:

- "Given the prior and pending litigation in the EDNC (Plaintiff's initial forum of choice), there simply is no reason for Plaintiff to have filed this action in the Middle District of North Carolina., other than inappropriate forum shopping" (Docket Entry 14 at 13; *see* Docket Entry 22 at 12; Docket Entry 31 at 12);

- Wendt's Eastern District suits "alleg[e] substantially the same facts and circumstances" as the instant suit (Docket Entry 14 at 3, 5; Docket Entry 22 at 3, 5; Docket Entry 31 at 3, 5);

- Wendt's Eastern District suits involve "substantially the same allegations" as the instant suit (Docket Entry 14 at 7; Docket Entry 22 at 6–7; Docket Entry 31 at 6);

- Wendt's Eastern District suits are "duplicative" of the instant suit (Docket Entry 14 at 8, 9; Docket Entry 22 at 8, 9; Docket Entry 31 at 8, 9); and

---

[9] That is not to say that *all* the statements in the motions to dismiss to which Wendt objected are problematic. For example, misstatements of no consequence—such as the exact date on which a particular lawsuit was filed (*see* Docket Entry 38 at 8)—do not merit Rule 11 sanctions.

19

- Wendt "could have timely joined [the instant] claims into his previously filed lawsuits [in the Eastern District], but instead he filed a new lawsuit in another jurisdiction" (Docket Entry 14 at 12–13).

These are not only losing arguments, *see supra*, Section III; they also contradict the Eastern District's order telling Wendt that he could not join his instant claims to his '3047 suit because his instant claims involve a "different prison," different defendants, and "distinct factual issues," making "the proper venue for these new claims . . . the United States District Court for the Middle District of North Carolina." *See Wendt*, 2024 WL 3955458, at *7–8. The Eastern District even told Wendt that he could "file a new action in that district asserting these claims." *See id.*

When Wendt pointed this out, Defendants' counsel did not make corrections—instead, they doubled down. Defendants' counsel made a chart that purports to show the similarities between the instant suit and those in the Eastern District, but the chart contains errors, such as listing Secretary Ishee as a defendant in the '3047 suit.[10] (*See* Docket Entry 41 at 3.) Defendants' counsel also attempted to argue that the Eastern District's order does not contradict their motion because the '3047 suit "represents only a portion of their overall motion." (Docket Entry 41 at 10.) But there is only one other suit that Defendants used to

---

[10] Secretary Ishee was named as a defendant in the original '3047 complaint. Docket Entry 1 at 7, No. 5:23-ct-03047 (E.D.N.C.). However, the Eastern District ordered Wendt to file an amended complaint making it clear which defendant Wendt was accusing of which offenses. *See* Docket Entry 4 at 4–6, 8 & Docket Entry 10 at 1, No. 5:23-ct-03047. When Wendt did so, he no longer named Ishee as a defendant. *See* Docket Entry 9 at 3–4, No. 5:23-ct-03047. That fact that the original '3047 complaint named Ishee is relevant to neither the rule against claim splitting nor the first-to-file rule, the only two grounds on which Defendants argue for dismissal based on the '3047 suit. *See supra*, Section III.B.–C.

support their claiming splitting and first-to-file arguments—the '3275 suit—and it is even less similar to the instant case than the '3047 suit.

In sum, it is difficult to understand why Defendants' counsel believed that their claim-splitting and first-to-file arguments were non-frivolous, and it is concerning that Defendants' counsel represented to the Court that Wendt "could have timely joined [the instant] claims into his previously filed lawsuits" in the Eastern District (Docket Entry 14 at 12–13), when the Eastern District expressly found otherwise.

For the above reasons, Wendt's motion to show cause is denied, and Wendt and Defendants' counsel are both warned that additional conduct like that described above could incur sanctions.

## V.    ATTEMPTED MOTIONS

Both parties have effectively attempted to make new motions in their responsive briefing on Rule 11 sanctions.  Local Rule 7.3(a) requires that "[e]ach motion shall be set out in a separate document."  Relying on similar language in its local rules, the Western District has repeatedly found that "a party may not include a motion in a responsive brief."  *See, e.g., Dubois v. Henderson Cnty. Bd. of Educ.*, No. 1:13-CV-00131-MR-DLH, 2014 WL 340475, at *9 (W.D.N.C. Jan. 30, 2014); *Magaha v. W & B Trucking, Inc.*, No. 115CV00159MOCDLH, 2015 WL 8759260, at *6 (W.D.N.C. Dec. 14, 2015).  The Court finds Western District's reasoning persuasive because including a motion in responsive briefing disrupts the normal procedures the opposing party uses to respond to a motion.

Here, Defendants' counsel made new arguments for the dismissal of two of Wendt's claims in the response to Wendt's motion to show cause.  (*See* Docket Entry 41 at 12–13.)

21

Then, when Wendt replied to that response, he included a motion to strike as part of his reply. (*See* Docket Entry 43.)  The Court considers neither of these portions of the parties' briefing except to the extent that they support the movant's responsive argumentation.  In the future, both parties should file any new motions as separate documents.

## VI.    MOTION FOR A PRELIMINARY INJUNCTION

Defendants have not filed a response to Wendt's motion for a preliminary injunction. "Under this Court's Local Rules, the failure to respond to a motion generally warrants granting the relief requested." *Wilson v. Fairfield Inn Suites-Marriott*, RDU, No. 1:16CV899, 2017 WL 11493776, at *1 (M.D.N.C. June 8, 2017) (citing LR 7.3(k)).  However, "the Court still has an independent obligation to ensure that entry of a preliminary injunction is warranted." *ClearOne Advantage, LLC v. Kersen*, 713 F. Supp. 3d 86, 88 (D. Md. 2024).

Given this case involves factual issues of whether PCI placed a substantial burden on Wendt's exercise of his religion, and an injunction would affect the management of the prison, the undersigned declines to consider the issue without Defendants' briefing.  Accordingly, the Court orders Defendants to respond to the motion for a preliminary injunction within fourteen days.

## VII.    CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that Wendt's motion to show cause (Docket Entry 37) is **DENIED**.  It is also **ORDERED** that Defendants respond to Wendt's motion for a preliminary injunction (Docket Entry 6) within fourteen days. Furthermore, **IT IS HEREBY RECOMMENDED** that Defendants' motions to dismiss or transfer venue (Docket Entries 13, 21, 30) be **DENIED** and that the Court **DISMISS**

Wendt's North Carolina constitutional law claims and his claims asserted on behalf of other inmates.

The Court warns Defendants' counsel that future frivolous filings could incur sanctions, and the Court warns Wendt that using his suit to harass state officials could incur sanctions. The Court reminds both parties that responsive briefing may not include new motions.

_/s/  Joe L. Webster_
United States Magistrate Judge

February 5, 2026
Durham, North Carolina